UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
At Baltimore

| | |
|---|---|
| **KENNEDY KRIEGER INSTITUTE**<br>707 North Broadway<br>Baltimore, MD 21205<br><br>Plaintiff,<br>v.<br><br>**ANTHEM HEALTH PLANS OF MAINE,<br>INC. T/A ANTHEM BLUE CROSS AND<br>BLUE SHIELD**<br>2 Gannett Drive<br>South Portland, ME 04106<br><br>and **ABC CORPORATIONS 1-10,**<br><br>Defendants. | Civil Action No.: |

## COMPLAINT

Plaintiff Kennedy Krieger Institute ("KKI" or "plaintiff"), by and through the undersigned counsel, Offit Kurman, P.A. and Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., application for admissions *pro hac vice* pending, by way of Complaint against defendant Anthem Health Plans of Maine, Inc. t/a Anthem Blue Cross and Blue Shield ("BCBS" or "defendant"), hereby says, states, and avers as follows:

### INTRODUCTION

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et. seq.*, ("ERISA") and more particularly 29 U.S.C. § 1109 and § 1132(a)(1)(B).

2. At all material times, Kregg Kane was a qualified participant in a medical plan (the "Plan") issued by defendant under Group Number 006775513.

3. Mr. Kane's daughter, Brenna Kane ("Brenna"), is a participant in the Plan through Mr. Kane.

4. Pursuant to an Assignment of Benefits, Mr. Kane appointed plaintiff as his Authorized Representative with power to file medical claims with the Plan; receive payment for all entitled plan benefits directly to plaintiff; and file a complaint or an appeal to any state of federal agency, among other things.

5. The Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this claim under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

7. This Court additionally has subject matter jurisdiction based on diversity of the parties, and the amount in controversy exceeds $75,000.00 as required under 28 U.S.C. § 1332(a)(2).

8. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this district, the breach for which relief is sought occurred in this district, and defendant regularly transacts business in this district.

## PARTIES

9. KKI is a non-profit corporation located in Baltimore, Maryland.

10. Defendant is a licensed insurance company with it principal place of business in South Portland, Maine.

11. Defendants ABC Corporations 1-10 are fictitious-name designations of one or more individuals, partnerships, corporations, subsidiaries and/or other entities which may become known through the course of discovery.

## FACTS COMMON TO ALL COUNTS

12. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

13. Brenna was born on April 2, 1998.

14. Brenna is a 21-year-old with a diagnosis of disruptive, impulse-control, and conduct disorders, stereotypic movement disorder with self-injurious behavior, autism spectrum disorder, attention deficit-hyperactivity disorder, moderate intellectual disability, and vision impairment secondary to self-injurious behavior.

15. In light of her condition, Brenna's parents serve as legal co-guardians for Brenna.

16. Brenna's maladaptive behaviors which occur on a daily basis include severe self-injurious behavior (punching self in face, eyes, and body, banging head on hard surfaces, self-biting, slamming body into walls and floor, and pulling out hair), aggression (hair pulling, head butting, hitting, punching, kicking, biting others), disruptive and destructive behaviors (screaming, breaking objects, knocking furniture over, throwing items), elopement (running from caregivers, leaving confined areas, such as school) spitting, disrobing, and elopement. Brenna's aggressive, self-injurious and destructive outbursts occur daily, and she targets herself, family members, caregivers, and others. As a result, Brenna presents significant risk of injury to herself and others.

17. Brenna has caused significant physical injuries to herself and others, including permanent retinal detachment in her right eye resulting in blindness, and concussions. Brenna is currently targeting her left eye with self-punching.

18. Brenna received half-day school services at a day program where she was staffed 5:1 and frequently injured herself and school staff. Brenna also received in-home behavioral services.

19. Brenna's problem behavior did not respond to outpatient or school-based intervention.

20. Brenna's severe problem behaviors place her and others at severe risk of injury on a daily basis; caregivers routinely sustain injuries and Brenna's family has had to lock every door and drawer in their home as well as remove any items from walls/counters/showers as Brenna would remove items to throw, destroy or use to conduct self-injurious behavior.

21. Brenna's behavioral and medical providers have noted that her behavior has not responded adequately to available local outpatient behavioral treatment; each provider has noted that Brenna's behavior is too complex and dangerous to treat on an outpatient basis and that she requires a specialized, long-term inpatient hospitalization to effectively treat her maladaptive behaviors.

22. Brenna's parents tried numerous interventions for her with little or no success. Thus, they sought to take Brenna to KKI for treatment at its world renowned inpatient Neurobehavioral Unit ("NBU").

23. KKI has had enormous success in treating patients such as Brenna. Historic outcome data collected by KKI show that 88% of patients achieve at least an 80% reduction in aggression, self-injury, property destruction, or other targeted behaviors and 86% of patients maintained behavior reductions in three and six month follow up examinations.

24. Furthermore, 94% of parents and caregivers expressed satisfaction with the care provided by KKI.

25. KKI concluded that the comprehensive multidisciplinary approach provided by KKI was medically necessary for Brenna to make significant progress with her maladaptive behaviors.

26. On June 26, 2018, KKI issued an authorization request to defendant for funding to treat BR for a period of four months in the NBU in order for the NBU to assess Brenna's behaviors, develop an effective treatment, generalize the treatment across all settings and train care providers.

27. Brenna was admitted to KKI on June 27, 2018.

28. On September 6, 2018, defendant issued a letter denying continuation of coverage and indicating that the requested services are not medically necessary.

29. KKI thereafter submitted a Level 1 Appeal, with supporting documents.

30. On October 17, 2018, defendant issued a determination upholding the denial of continued coverage.

31. On November 20, 2018, KKI requested an Expedited Level 2 Appeal of defendant's denial.

32. On December 21, 2018, the entity providing utilization review service on behalf of defendant issued an essentially one-page letter upholding the decision that continued treatment in the NBU after September 6, 2018 is no longer medically necessary in light of significant improvements in Brenna's problem behaviors.

33. Defendant's stated rationale for its denial is without merit.

34. Despite defendant's appeal decision, KKI has continued to treat Brenna as her needs exceed the capacity and resources available in her home state.

## COUNT I

35. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

36. Defendant's denial is without merit. Specifically, defendant's contention that Brenna has not met the medical necessity criteria for inpatient treatment from September 6, 2018 and beyond under the APA criteria 6.1 due to the fact that she experienced a reduction in problematic behavior is baseless.

37. The mere fact that a patient has improved is not, in itself, grounds for discharge.

38. The APA criteria 6.1 states that "admission criteria continue to be met either because of persistent symptoms or the emergence of new symptoms." Here, Brenna's symptoms persisted at the time of discharge and up to the present, including causing injuries to herself and others.

39. While Brenna is more manageable now than when admitted, it is only possible under the extremely high level of care provided at KKI which is not possible on an outpatient basis.

40. In fact, Brenna continues to engage in high rates of aggressive behaviors, resulting in head contusions to three different staff members, among other things.

41. Defendant's contention that continued stay at the inpatient psychiatric unit does not meet APA criteria 6.2 is likewise without merit.

42. The APA criteria 6.2 requires that "treatment goals are realistically achievable towards allowing treatment in a less restrictive environment."

43. Brenna had made progress, but her symptoms persist as treatment is being generalized across all settings, including caregivers. Furthermore, Brenna's disabilities make her own involvement in her care impossible, thus caregivers must be fully trained in her behavioral treatment before she can be discharged, or all progress that has been made during admission will be lost.

44. Despite providing ample medical records and support to overturn the denial, on December 21, 2018 the utilization review analyst issued a one paged letter upholding defendant's unsupported denial.

45. Defendant's denial of benefits for the period from September 6, 2018 through October 31, 2018 was unsupported by substantial evidence, erroneous as a matter of law, not made in good faith and in violation of ERISA.

**WHEREFORE**, plaintiff demands the following: (a) that defendant cover the full cost and expenses of Brenna's treatment in the NBU program from September 6, 2018 to October 31, 2018; (b) that defendant be required to reimburse plaintiff for reasonable attorneys' fees and costs incurred in this action; and (c) imposition of such other and further penalties against defendant as deemed appropriate.

## COUNT II

46. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

47. As stated above, plaintiff has taken all measures necessary to exhaust the administrative remedies under the Plan.

48. Defendant erroneously denied plaintiff's claim.

49. The denial of plaintiff's claim for benefits was unsupported by substantial evidence, erroneous as a matter of law, not made in good faith, and in violation of ERISA.

50. Plaintiff is entitled to recover their reasonable attorneys' fees and costs of action pursuant to 29 U.S.C. § 1132(g).

**WHEREFORE**, plaintiff demands the following: (a) that defendant cover the full cost and expenses of Brenna's treatment in the NBU program from September 6, 2018 to October 31, 2018;

(b) that defendant be required to reimburse plaintiff for reasonable attorneys' fees and costs incurred in this action; and (c) imposition of such other and further penalties against defendant as deemed appropriate.

DATE: July 15, 2019

Respectfully submitted,

BY: _____
Angela Davis Pallozzi
OFFIT KURMAN, P.A.
300 East Lombard Street, Suite 2010
Baltimore, MD 21202
Telephone: 410.209.6427
Facsimile: 410.209.6435
Email: apallozzi@offitkurman.com

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.
Alan C. Milstein (*pro hac vice* pending)
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: 856-662-0700
Facsimile: 856-488-4744
E-Mail: amilstein@shermansilverstein.com

*Attorneys for Plaintiff*